No. 108,649

In the Matter of STEVEN C. ALBERG, *Respondent*.

(294 P.3d 1192)

Opinion filed February 22, 2013.

*Alexander M. Walczak*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., Topeka, argued the cause, and *Steven C. Alberg*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Steven C. Alberg, of Olathe, an attorney admitted to the practice of law in Kansas in 1980.

The office of the Disciplinary Administrator filed a formal complaint against the respondent on June 14, 2011, alleging multiple violations of the Kansas Rules of Professional Conduct (KRPC). The respondent answered the complaint on July 7, 2011. The Disciplinary Administrator filed an amended formal complaint on November 16, 2011, and a panel of the Kansas Board for Discipline of Attorneys conducted a hearing on that complaint on June 12, 2012. The respondent personally appeared at the hearing and was represented by counsel. The hearing panel determined the respondent violated KRPC 1.5(f)(1) (2012 Kan. Ct. R. Annot. 492) (fees); 1.7(a)(2) (2012 Kan. Ct. R. Annot. 506) (conflict of interest); 1.8(k) (2012 Kan. Ct. R. Annot. 516) (sexual relationship with client); 1.15(a), (b), and (d)(2)(iii) (2012 Kan. Ct. R. Annot. 541) (safekeeping of property); 3.3(a)(1) (2012 Kan. Ct. R. Annot. 582) (candor toward the tribunal); and 8.4(b) (2012 Kan. Ct. R. Annot. 643) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer).

At the conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

## "FINDINGS OF FACT

. . . .

### "*Representation of T.G.*

"6.   In April, 2007, T.G. called the Respondent regarding representation for a divorce. T.G. had previously retained the Respondent to represent her in an action for divorce years before.

"7.   The Respondent and T.G. agreed to meet for lunch. During the lunch meeting, T.G. and the Respondent discussed her domestic situation. The Respondent provided T.G. advice on how to prepare for her divorce. Specifically, the Respondent told T.G. what documents she needed to gather in order to file for divorce. The Respondent and T.G. re-formed their attorney client relationship during the lunch meeting.

"8.   The Respondent and T.G. did not enter into a fee agreement.

"9.   Shortly after the lunch meeting, T.G. and the Respondent began a sexual relationship. T.G. and the Respondent continued their personal and sexual relationship in excess of a year. In late 2007, T.G. moved into the Respondent's residence.

"10.   On October 4, 2007, the Respondent filed a petition for divorce on behalf of T.G. Eventually, the Respondent and counsel for T.G.'s estranged husband settled the property issues. As a result, the Respondent received a check in the amount of $47,516.00, for T.G.'s share of the equity in the marital home.

"11.   T.G. instructed the Respondent to deposit the check into the Respondent's client trust account.

"12.   From time to time, T.G. instructed the Respondent to provide her with a portion of the money. Additionally, from time to time, the Respondent asked and received permission from T.G. to borrow some of the money he held on her behalf. On one occasion, the Respondent borrowed money from T.G.'s funds held in trust to make his payroll.

"13.   In March, 2008, contrary to T.G.'s understanding of the Respondent's intention, the Respondent asked T.G. to pay attorneys fees for her representation in the divorce proceedings. The Respondent told T.G. that she owed him $10,000 in attorneys fees. T.G. allowed the Respondent to withdraw the attorney fees from the funds he held for her in his client trust account. [Footnote: There was some evidence in this matter that after asking for $10,000 in attorney fees, the Respondent later reduced that amount to $7,500. Whether the Respondent requested $10,000 or $7,500 is only relevant to determine how much money the Respondent owed T.G. The evidence clearly established that the Respondent requested $10,000 as that is the amount of T.G.'s check written at the time.]

"14.   The personal relationship between T.G. and the Respondent deteriorated and eventually, T.G. moved out of the Respondent's residence.

"15.   T.G. repeatedly requested that the Respondent provide her with an accounting of the $47,516 which he held in trust for her. The Respondent failed to provide T.G. with a complete accounting of the funds. The accounting that the

Respondent provided to T.G. listed only the amounts which the Respondent provided to T.G. The Respondent failed to include the amounts which he borrowed from time to time.

"16. Later, T.G. filed suit against the Respondent. The litigation proceeded to jury trial. At trial, the jury found in favor of T.G. On November 8, 2011, the Court issued a journal entry of judgment on the jury verdict, which provides:

'The jury found that Steven Alberg breached a fiduciary duty to the plaintiff [T.G.] and awarded zero damages to plaintiff on the breach of fiduciary claim. The jury then stated "yes" to the question of whether "punitive damages should be assessed against the defendant for breach of his fiduciary duty."

'The jury found in favor of the plaintiff on her *quantum meruit* claim and awarded plaintiff $16,000. The jury answered "yes" to the question of "did the defendant Steven Alberg convert the money placed into his trust account or the personal property of the plaintiff [T.G.]?" and found that plaintiff's damages were $12,000. The jury answered "no" as to whether punitive damages should be assessed for conversion.

'The jury awarded $28,000 in total damages to the plaintiff [T.G.].'

"17. Additionally, the Court also stated that it would conduct a hearing on punitive damages on a later date. The Court did not order any punitive damage. Thereafter, T.G. appealed the Court's decision to not award punitive damages to the Kansas Court of Appeals, appellate number 107211. T.G.'s appeal remains pending.

### *"Representation of K.J.*

"18. During the Respondent's representation of T.G., T.G. referred her sister, K.J., to the Respondent for representation. K.J. was seeking a divorce from her estranged husband, who resided in Africa. K.J. and her estranged husband owned property and a variety of businesses in Africa, including a precious gem mining operation.

"19. The case involving K.J. and her estranged husband was contentious and required a significant amount of the Respondent's time. K.J.'s estranged husband refused to acknowledge the Kansas court's jurisdiction and did not appear personally in court.

"20. On April 1, 2008, the Respondent successfully negotiated a stipulation and property settlement agreement.

"21. At the time the Respondent began the representation, the Respondent failed to reduce their fee agreement to writing. Later, however, on April 29, 2009, the Respondent memorialized his understanding of their agreement in a letter. The letter provided, in pertinent part, as follows:

'[K.J.], in light of my relationship with your family, we have continued on this case/quest for quite some time without formally rendering our longstanding oral agreement into writing as to my fees, costs and representation. In that regard we have agreed that you will be responsible for attorney's

fees at the rate of $175.00 per hour or I will receive fees consisting of ⅓ of any and all proceeds of any kind or nature received or recovered from Respondent. As you know there are also "costs" involved for which you will be ultimately responsible. In regards to my attorney fees awarded me by the court you need to know that does not remove your ultimate responsibility for the fees which will remain as above without credit or offset of your responsibility hereunder. In the event no proceeds are collected you are still responsible for the hourly fees as a minimum.'

"22.    On May 20, 2009, the Court issued a journal entry in K.J.'s divorce case. In the journal entry, the Court granted the Respondent's request for an award of temporary attorney's fees in the amount of $50,000 to be paid by K.J.'s estranged husband to K.J. K.J.'s estranged husband did not pay the award of temporary attorney's fees.

"23.    At the time of the final hearing in the divorce, the Respondent provided the Court with an itemized billing statement. The Respondent sought $184,432 in attorney fees. The Respondent's billing statement contained false entries.

"24.    Following the divorce trial, K.J. terminated the Respondent's representation.

"25.    On October 23, 2009, the Court issued a journal entry of divorce. In the journal entry of divorce, the Court included the following:

'21.    The Petitioner is requesting an award of attorney fees in the amount of $184,432.00. The Court has reviewed the itemized billing by the Petitioner and the response from counsel for the Respondent. The Court hereby awards unto the Petitioner total attorney fees in the amount of $45,000.00 and hereby enters a judgment in favor of the Petitioner and against the Respondent in the amount of $45,000.00 as and for her attorney fees.'

"26.    On November 16, 2009, the Respondent wrote to K.J. regarding the outstanding attorney fees. The letter provided:

'Thank you for yours of November 13, 2009. Needless to say we disagree with your version of the events. In regards to the fee we were doing the divorce itself for an hourly fee. We also agreed that I would be entitled to ⅓ of any recovery we could make in collection of the award. I think we have always known he would not voluntarily pay you and collection efforts would more than likely be required. In any event, please note that I am putting a lien in the file for the hourly fees and I actually don't expect to get any contingency from the "collection" since we are out of the case.'

"27.    On December 4, 2009, the Court issued an order, *sua sponte*. The order provided:

'The Court hereby finds that former counsel for the Petitioner, Steven C. Alberg, shall not have an attorney's lien on child support or spousal maintenance, both arrears and current, due from the Respondent to the Petitioner. Furthermore, the Court previously Ordered that all child sup-

port and spousal maintenance payments shall be paid by the Respondent to the Kansas Payment Center.'

"28.  K.J., through new counsel, filed a motion to determine attorney-client agreement. On January 28, 2011, the Court ruled on the motion. The Court made the following findings of fact and conclusions of law:

'1.  FINDINGS OF FACT:

    a.  The Petitioner obtained the services of Steven C. Alberg in the year 2007 to represent her in a divorce action against her husband. There was no written attorney-client agreement signed between the Petitioner and Mr. Alberg. The Petition for Divorce was filed in September of 2007;

    b.  In April of 2009, during the pendency of the divorce, Mr. Alberg prepared a letter to [K.J.] summarizing his understanding of the fee arrangement. The letter begins with the language "This letter is to better acquaint you with our procedures in handling domestic relations matters. In order to enlighten you and avoid possible misunderstandings I would like to set some of the policies and procedures out in writing." The letter further states ". . . we have agreed that you will be responsible for attorney's fees at the rate of $175.00 per hour or I will receive fees consisting of ⅓ of any and all proceeds of any kind or nature received or recovered from Respondent.";

    c.  After the divorce trial in September of 2009, the Petitioner terminated the services of Mr. Alberg and Mr. Alberg sent a letter to [K.J.] dated November 16, 2009. The letter reveals "In regards to the fees we were doing the divorce itself for an hourly fee. We also agreed that I would be entitled to ⅓ of any recovery we could make in collection of the award."

    d.  The Petitioner testified that she never received any regular billings or any billing statements at all from Mr. Alberg during his representation of her in this matter;

    e.  The Petitioner sent Mr. Alberg a letter dated November 13, 2009 wherein she indicated that her understanding of the attorney-client fee arrangement was a contingent fee of ⅓;

    f.  Mr. Alberg did generate a billing statement that was submitted to the Court at the time of closing arguments indicating computation of time expended in this matter at an hourly rate of compensation;

    g.  Mr. Alberg testified that he did not have a written attorney-client fee contract, that the Petitioner told him that she would give him ⅓ of what she got in the divorce and that he did not send regular billing statements to the Petitioner. Mr. Alberg testified that he had a contingent fee agreement with the Petitioner at the beginning of his representation in the divorce action for any amounts that he would collect after judgment was entered. Mr. Alberg testified that he was

of the opinion that he would charge the hourly rate and then upon collection of any judgment amount that exceeded the hourly rate total he would credit or waive the hourly rate. Mr. Alberg testified that he did not charge a retainer fee to be paid at the beginning of his representation of the Petitioner and that he did not expect his client to be making regular payments towards his fees; and

h. The Petitioner, K.J., testified that her understanding of the attorney-client fee arrangement was that Mr. Alberg was going to take ⅓ of what she received in the divorce excluding child support and spousal maintenance. She further testified that she never received an itemized billing statement from Mr. Alberg or his office and that she was unaware that a contingent fee arrangement in a divorce case was unlawful. She testified that Mr. Alberg handed her the letter of April 29, 2009, while at his office and that he said not to worry about the contents of the letter since it was only for Court.

'2. CONCLUSIONS OF LAW:

a. Mr. Alberg entered into a contingent fee arrangement with [K.J.] to represent her in a divorce action in violation of the Kansas Rules of Professional Conduct as adopted by the Kansas Supreme Court and found in Rule 1.5(f)(1). See *In re Jarvis*, 254 Kan. 829, 869 P.2d 671 (1994);

b. The evidence is substantial, compelling, clear and convincing to the Court that the attorney-client fee arrangement entered into by Mr. Alberg with his client, [K.J.] at the beginning of his representation of her was contingent upon Mr. Alberg obtaining a divorce for his client and obtaining a judgment from the Court upon which he then could collect and receive ⅓ of the proceeds as his fees. This was not a post-divorce contract wherein Mr. Alberg would receive ⅓. This type of contract in a divorce action violates public policy established in Kansas and is non-compensable.

c. Therefore, the attorney-client fee arrangement is unenforceable by Mr. Alberg and therefore the Court hereby extinguishes his attorney fee lien. Furthermore, the Court hereby sets aside any previous award of attorney fees in favor of Mr. Alberg and based upon the findings and Order of the Court on this issue, finds that adjudication of Mr. Alberg's attorney fees lien *is now moot and unnecessary as it is dismissed;* and

d. The Court by certified copy of this Journal Entry does hereby give notice to the Office of the Disciplinary Administrator of the Findings and Order of the Court.'

"29. Thereafter, the Respondent asked the Court to reconsider its ruling. The Court declined. As a result, the Respondent appealed the decision to the Kansas Court of Appeals.

"30. The Kansas Court of Appeals affirmed the District Court, stating:

'In sum, we must accept the district court's factual finding that Alberg entered into a contingent-fee agreement in [K.J.]'s divorce case. Because Alberg entered into an agreement that is void as against clearly established Kansas public policy, Alberg may not recover any fee for his work in the case. We therefore affirm the district court's judgment.'

*"Criminal Convictions*

"31. On May 20, 2010, the County Attorney of Miami County, Kansas, charged the Respondent in a three-count complaint with cultivation of marijuana, a level 3 nonperson drug felony, possession of marijuana, a class A nonperson misdemeanor, and possession of drug paraphernalia, a class A nonperson misdemeanor.

"32. The Respondent entered into plea negotiations with the County Attorney. As a result of the negotiations, the Respondent entered a plea of guilty to possession of marijuana, a class A nonperson misdemeanor and possession of drug paraphernalia, a class A nonperson misdemeanor. In return, the County Attorney dismissed the felony charge.

"33. The Court sentenced the Respondent to a jail term of one year but suspended the imposition of the sentence and placed the Respondent on supervised probation for one year. Additionally, the Court ordered the Respondent to pay court costs and fees.

"34. The Respondent successfully completed the terms and conditions of probation. According to the Respondent, he has not used marijuana since his arrest.

## "CONCLUSIONS OF LAW

"35. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.5, KRPC, 1.7, KRPC 1.8, KRPC 1.15, KRPC 3.3, and KRPC 8.4, as detailed below.

"36. Attorneys may charge contingent fees in certain cases. However,

'A lawyer shall not enter into an arrangement for, charge, or collect . . . [a]ny fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony, support, or property settlement.' KRPC 1.5(f)(1).

In representing K.J., the Respondent entered into a fee agreement in a domestic relations case which was contingent upon the [*sic*] securing a divorce and property settlement, in violation of KRPC 1.5(f)(1). Thus, the Hearing Panel concludes that the Respondent violated KRPC 1.5(f)(1).

"37. KRPC 1.7 provides, in pertinent part, as follows:

'(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

. . . .

(2) there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.'

This subsection has been interpreted to prohibit sexual relations between attorneys and clients. *In re Berg*, 264 Kan. 254, 955 P.3d 1240 (1998).

"38. The same day the Respondent re-formed his attorney-client relationship with T.G., he began a personal and sexual relationship with T.G. The Respondent's personal interest in the personal and sexual relationship with T.G. created a substantial risk that the Respondent's representation of T.G. would be materially limited. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.7(a)(2).

"39. On July 1, 2007, KRPC 1.8(k) became effective. That subsection provides: '[a] lawyer shall not have sexual relations with a client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced.' The Respondent's sexual relationship with T.G. began in April 2007, following their lunch meeting and continued well after July 1, 2007. The sexual relationship did not exist until after the attorney-client relationship was re-formed. As such, the Hearing Panel concludes that the Respondent also violated KRPC 1.8(k) by engaging in a sexual relationship with a client.

"40. Lawyers must deal properly with clients' property. KRPC 1.15 provides the requirement in this regard.

"41. Specifically, KRPC 1.15(a) requires lawyers to refrain from commingling their property with their clients' property:

'A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.'

In this case, the Respondent violated KRPC 1.15(a) when he converted T.G.'s property to his own and when he commingled his property with T.G.'s property. The Respondent took funds from his client trust account—money belonging to his client—and put those funds into his operating account to make payroll. Therefore, the Hearing Panel concludes that the Respondent violated KRPC 1.15(a) by converting his clients property and by commingling client property with his own property.

"42. KRPC 1.15(b) and KRPC 1.15(d)(2)(iii) require attorneys to provide an accounting of property which a client is entitled to receive, as follows:

'(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by

agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

. . . .

'(d)   Preserving identity of funds and property of a client.

. . . .

(2)   The lawyer shall:

. . . .

(iii)   Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to the client regarding them.'

The Respondent violated KRPC 1.15(b) and KRPC 1.15(d)(2)(iii) when the Respondent repeatedly failed to provide T.G. with an accounting of the $47,516 which the Respondent held in his client trust account. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.15(b) and KRPC 1.15(d)(2)(iii).

"43.   KRPC 3.3(a)(1) provides that '[a] lawyer shall not knowingly make a false statement of material fact or law to a tribunal.' The Respondent provided false information to the Court when he provided the Court with the billing statement that contained false entries. Because the Respondent provided false information to the Court, the Hearing Panel concludes that the Respondent violated KRPC 3.3(a)(1).

"44.   'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the Respondent was charged with marijuana cultivation, a felony, possession of marijuana, a misdemeanor, and possession of drug paraphernalia, a misdemeanor. Pursuant to a plea agreement, the Respondent entered a plea of guilty to possession of marijuana and possession of paraphernalia. Based upon the Respondent's convictions, the Hearing Panel concludes that the Respondent committed criminal acts and those criminal acts reflect directly on the Respondent's fitness as a lawyer in other respects, in violation of KRPC 8.4(b).

"AMERICAN BAR ASSOCIATION
"STANDARDS FOR IMPOSING LAWYER SANCTIONS

"45.   In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"46.   *Duty Violated.* The Respondent violated his duty to his client to properly safeguard his client's property. Further, the Respondent violated his duty to the

public, to the legal system, and to the legal profession to maintain his personal integrity.

"47.   *Mental State.* The Respondent knowingly violated his duties.

"48.   *Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to his clients, the public, the legal system, and the legal profession.

"49.   *Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"50.   *Dishonest or Selfish Motive.* The Respondent's misconduct was motivated by dishonesty and selfishness. The Respondent provided false information to the Court in his billing statement. Accordingly, the Hearing Panel concluded that the Respondent's misconduct was motivated by dishonesty.

"51.   *A Pattern of Misconduct.* The Respondent engaged in a pattern of misconduct. Over time, he repeatedly borrowed money from his client. Further, he repeatedly failed to provide a proper accounting. Finally, the Respondent engaged in a sexual relationship with his client over an extended period of time.

"52.   *Multiple Offenses.* The Respondent committed multiple offenses. The Respondent violated KRPC 1.5, KRPC 1.7, KRPC 1.8, KRPC 1.15, KRPC 3.3, and KRPC 8.4.

"53.   *Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the Respondent to the practice of law in 1980. The Respondent has substantial experience in the practice of law.

"54.   *Illegal Conduct, Including that Involving the Use of Controlled Substances.* The Respondent engaged in illegal conduct. As a result of his misconduct, he was convicted of possession of marijuana and possession of paraphernalia. As such, the Respondent engaged in illegal conduct.

"55.   Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"5[6].   *Absence of a Prior Disciplinary Record.* The Respondent has not previously been disciplined.

"57.   *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* At the hearing, the Respondent admitted much of his misconduct.

"58.   *Imposition of Other Penalties or Sanctions.* As a result of the Respondent's criminal convictions, he was placed on probation and successfully completed the terms and conditions of his probation.

"59.   In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

'4.32 Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

'6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.'

"RECOMMENDATION

"60. The Disciplinary Administrator recommended that the Respondent be disbarred. Counsel for the Respondent recommended that the Respondent be censured and that the censure be published in the Kansas Reports.

"61. Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for a period of two years. At the time of his reinstatement, the Respondent should be required to provide evidence from his treatment provider that he is currently mentally and emotionally fit to practice law. While the Hearing Panel is recommending that the Respondent provide evidence of current fitness prior to reinstatement, the Hearing Panel is not recommending that the Respondent be required to undergo [a] reinstatement hearing.

"62. Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2012 Kan. Ct. R. Annot. 350). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of both the hearing before the panel and the hearing before this court. The respondent filed no exceptions to the hearing panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2012 Kan. Ct. R. Annot. 368). Those admitted facts support the hearing panel's conclusions of law, and we therefore adopt the panel's findings and conclusions. Thus, the only issue before us is the appropriate discipline.

The hearing panel recommended that respondent be suspended from the practice of law for a period of 2 years and that before reinstatement, he be required to provide evidence from his treatment provider that he is currently mentally and emotionally fit to practice law. At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator recommended that respondent be disbarred from the practice of law. Respondent recommended that he be censured with such censure published in the Kansas Reports.

"The recommendation of the panel or the Disciplinary Administrator as to sanctions to be imposed shall be advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended by the panel or the Disciplinary Administrator." Supreme Court Rule 212(f) (2012 Kan. Ct. R. Annot. 370).

Here, the respondent's violations are significant, repeated, and numerous, and include entering into a contingent fee agreement in a domestic relations case in violation of KRPC 1.5(f)(1) (2012 Kan. Ct. R. Annot. 492); engaging in a sexual relationship with a client in violation of KRPC 1.8(k) (2012 Kan. Ct. R. Annot. 516) thereby creating a substantial risk that representation of the client would be materially limited in violation of KRPC 1.7(a)(2) (2012 Kan. Ct. R. Annot. 506); converting and commingling client property in violation of KRPC 1.15(a); repeatedly failing to provide an accounting of client's funds held in respondent's client trust account in violation of KRPC 1.15(b) (2012 Kan. Ct. R. Annot. 541) and KRPC 1.15(d)(2)(iii); providing the court with a billing statement containing numerous false entries in violation of KRPC

3.3(a)(1) (2012 Kan. Ct. R. Annot. 582); and committing criminal acts reflecting directly on the respondent's fitness as a lawyer in other respects in violation of KRPC 8.4(b) (2012 Kan. Ct. R. Annot. 643).

At oral argument in this case, respondent demonstrated no real perception of the significance of his numerous violations of the rules of professional conduct. Nor did he fully accept responsibility for his violations, instead describing himself as "a white knight" who allowed himself to be led by his heart. Respondent's inability to understand or take responsibility for the nature and breadth of his professional misconduct underscores the significance of the misconduct and engenders our decision that disbarment from the practice of law is the appropriate sanction. However, a minority of the court would impose discipline short of disbarment.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Steven C. Alberg be disbarred from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(1) (2012 Kan. Ct. R. Annot. 294).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2012 Kan. Ct. R. Annot. 397), as amended December 1, 2012.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas reports.